# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**DEBORAH POPOVICH,**

　　　　　　　　　　　　**Plaintiff,**

　　　**v.**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security,**

　　　　　　　　　　　　**Defendant.**

Civ. No. 16–3042 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

　　　Deborah Popovich brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434 and 1381–1385. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I.　BACKGROUND

　　　Ms. Popovich seeks to reverse an ALJ's finding that she was not disabled from October 1, 2010, the alleged onset date, through January 13, 2015, the date of the ALJ's decision. (R. 11–19)[1]

---

[1]　　　Pages of the administrative record (ECF no. 6) are cited as "R. __." The Brief in Support of Plaintiff (ECF no. 11) is cited as "Pl. Br." Defendant's Brief Pursuant to Local Civil Rule 9.1 (ECF no. 16) is cited as "Def. Br."

Ms. Popovich completed her applications for DIB and SSI on February 21, 2103, claiming that she was disabled since October 1, 2010, as a result of atrial fibrillation, chronic heart failure, dizziness, light-headedness, numbness in her limbs, and cold sweat breakouts after long walks. (R. 11, 94, 261–68) Her application was denied initially on March 23, 2013 (R. 126, 136), and upon reconsideration on June 24, 2013 (R. 146, 156). On September 2, 2014, Popovich appeared and testified at a hearing before ALJ Michal L. Lissek. (R. 11, 58–82) Subsequently, at a supplemental hearing held on December 10, 2014, before ALJ Beth Shillin,[2] at which Popovich was represented by Walter J. Curtis, Esq., medical expert Dr. Martin Fechner and vocational expert Jackie L. Wilson testified. (R. 24–53) Following the supplemental hearing, ALJ Shillin found that Popovich was not under a "disability," as defined in the Social Security Act. (R. 11–19) On April 8, 2016, the Appeals Council denied Popovich's request for review (R. 1–5), rendering the ALJ's decision the final decision of the Commissioner. Popovich then appealed to this Court, challenging the ALJ's determination that she was not disabled from October 1, 2010, through January 13, 2015. Popovich now appeals that decision.

## II.  DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for Title XVI SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in

---

[2]   ALJ Lissek was unable to preside at the supplemental hearing. (R. 26)

death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

## A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration (the "Commissioner") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant

numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

4

This Court may, under 42 U.S.C. §§ 405(g) and 1383(c)(3), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B.  The ALJ's Decision**

ALJ Shillin (the "ALJ") properly followed the five-step process in determining that Popovich was not disabled for the period from October 1, 2010, through January 13, 2015. Her findings may be summarized as follows.

**Step 1**

At step one, the ALJ determined that Popovich had not engaged in substantial gainful activity in the relevant period. (R. 13 ¶ 2)

**Step 2**

At step two, the ALJ found that Popovich had the following severe impairments: "heart failure, arrhythmias, pulmonary vascular congestion, atrial fibrillation, obesity, hypertension, cardiomyopathy, and tingling in hands and fingers." (R. 13 ¶ 3)

**Step 3**

At step three, the ALJ determined that, through January 13, 2015, Popovich's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 14 ¶ 4)

**Step 4 – RFC /Ability to Perform Past Work**

At step four, "[a]fter careful consideration of the entire record," the ALJ found that, through the date last insured, Popovich had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant: is precluded from climbing ladders and scaffolds, is precluded from exposure to moving machinery, and must have reasonable access to restroom breaks." (R. 14 ¶ 5) The ALJ found that the specific demands of Popovich's past relevant work as an executive assistant at a painting company exceed her RFC. However, Popovich retained the ability to meet the demands of past relevant work as an administrative assistant as generally performed in the national economy. (R. 17 ¶ 6)

**Step 5**

At step five, the ALJ considered Popovich's age, education, work experience, and residual functional capacity, as well as the Medical-Vocational Guidelines, and determined that Popovich is able to perform other jobs existing in significant numbers in the national economy. (R. 17–18 ¶ 6) Relying on the testimony of a vocational expert ("VE"), Jackie L. Wilson, the ALJ identified several representative unskilled, light jobs that Popovich could perform despite her limitations: (1) inspector and hand packager (Dictionary of Occupational Titles ("DOT") # 559.687-074); (2) photocopy machine operator (DOT # 207.685-014); and (3) sealing and canceling machine operator (DOT # 208.685-026). According to the VE, collectively, more than 200,000 such jobs exist nationally. (R. 18 ¶ 6) The ALJ noted that there would be other work in the national economy that Popovich could perform even if a limitation for only occasional fingering and handling were added to Popovich's RFC. (*Id.*)

6

Accordingly, ALJ Shillin concluded that Popovich was not under a disability, as defined in the Social Security Act, from October 1, 2010, through January 13, 2015. (R. 19 ¶ 7)

## C.    Analysis of Popovich's Appeal

Ms. Popovich challenges ALJ Shillin's determination that she was not disabled during the relevant period, arguing that the ALJ committed errors at steps three and four. In addition, Popovich alleges several procedural irregularities. At step three ALJ Shillin purportedly did not herself consider, or ask the medical expert, whether Popovich's eight severe impairments in combination were the medical equivalent of a listed impairment. (Pl. Br. 15–16) At step four, Popovich contends that the ALJ did not properly support her RFC determination. Popovich argues that the RFC determination is contradicted by Popovich's testimony, her excellent work record, and the opinion of her treating cardiologist. (Pl. Br. 13) Also at step four, Popovich contends, the ALJ improperly accepted the allegedly incomplete and conclusory RFC opinion of medical expert Dr. Fechner. (Pl. Br. 15)

Popovich also argues that her case was subjected to several procedural irregularities. ALJ Shillin issued the decision in Popovich's case even though it was ALJ Lissek who heard Popovich testify about her subjective complaints. Popovich calls this a "decision by committee" and argues that the substitution did not conform to the guidelines in HALLEX I-2-840. Similarly, the medical expert never heard Popovich testify, and "was not given any synopsis or particulars of that testimony. This was in contradiction to HALLEX I-2-539, which instructs the ALJ to summarize the opening statement or relevant testimony on the record for the medical expert not present during the opening statement or relevant testimony. (Pl. Br. 10–11)

Popovich requests that this Court reverse the ALJ's decision or remand the decision to the Commissioner for a new hearing and decision. Addressing

each of Popovich's arguments in turn, I find that the ALJ's findings do not contain any errors of law or procedure, and that they are supported by substantial evidence.

### 1.    The ALJ's Step Three Evaluation

Ms. Popovich argues that ALJ Shillin's step three analysis "represents a combination of omissions, misstatements, vague assertions and boilerplated agency-speak rendering the step 3 analysis beyond this Court's Judicial Review," and necessitates remand for analysis by a cardiologist "to opine on medical equivalence." (Pl. Br. 24) I disagree. The claimant bears the burden of proving that her impairments, whether individually or collectively, equal or meet those listed in Appendix 1. Popovich has not met this burden.

First, Popovich contends that the ALJ mistakenly found that Popovich does not suffer from chronic heart failure, ischemic heart disease, or coronary artery disease despite record evidence of these conditions. (Pl. Br. 21–22) This mischaracterizes the ALJ's findings. In fact, the ALJ acknowledged these conditions but found that they did not rise to the level of severity required to meet any listed criteria. (R. 12 ¶ 4) That Popovich suffers from those conditions is not disputed, but it also is not sufficient. *See Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). Popovich does not point to any evidence that her conditions rise to the severity required by the listings.

Second, Popovich points out that she has "[c]ardiomyopathy with an ejection fraction established between 35% and 43–48%," and objects to the omission of this condition at step three. (Pl. Br. 22) That objection is meritless. As she herself acknowledges, only an ejection fraction of 30% or less meets the

listing for 4.02 chronic heart failure.[3] (*See* Pl. Br. 22) Further, the 35% ejection fraction rate that Popovich cites was recorded during a temporary worsening of her cardiac condition. During the entire relevant period, Popovich's other ejection fraction estimates were 40% (R. 421), 43% (R. 455), 48% (R. 590, 598), 50% (R. 429), and 55% (R. 493). The medical records classify these ejection fraction levels as a mild or moderate reduction in ventricular function. (R. 421, 455, 598, 429) Dr. Fechner testified that an ejection fraction of 43% is "a bit low but not a problem." (R. 29) Thus, there is no evidence that the severity of Popovich's cardiomyopathy rises to listing levels.

Third, Popovich criticizes the ALJ's omission of her cardiac arrhythmias at step three and the failure to compare that condition to listing 4.05. However, for recurrent arrhythmias to meet that listing, they must result in "uncontrolled, recurrent episodes of cardiac syncope or near syncope despite prescribed treatment." 20 C.F.R. pt. 40 subpt. P, app. 1, § 4.05. Here, the medial record reveals that Popovich experienced no episodes of syncope or near syncope (R. 425, 432, 443, 564, 577, 593), and Popovich does not point to any contrary evidence. Thus, Popovich has not met her burden to prove that her impairments individually equal or meet those listed in Appendix 1.[4]

---

[3]     Popovich refers to "the cardiac listings at paragraph 4.04B," but appears to have intended listing 4.02, as there is no mention of ejection fraction levels at listing 4.04. *See* 20 C.F.R. pt. 40 subpt. P, app. 1, § 4.02; *id.* § 4.05.

[4]     Additionally, it hardly need be said that a claimant cannot carry her burden by rhetorically asking questions such as, "If 'pulmonary vascular congestion' is a severe impairment at step 2, why isn't it mentioned at all at step 3 or compared to any listing? And if plaintiff suffers a severe impairment recognized as 'tingling in hands and fingers' why isn't it mentioned at step 3 and what restrictions make it a severe impairment?" (Pl. Br. 23) (citations omitted) It is her burden at step three to prove that a condition meets or equals the listings in Appendix 1. Wondering aloud why a particular condition was not considered is not evidence that the condition meets the criteria for a listing.

However, "if a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.,* 279 F. App'x 149, 151–52 (3d Cir. 2008); *see also* 20 C.F.R. § 404.1526(b). The Third Circuit has stated that step three requires the ALJ to perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett,* 220 F.3d at 119. The ALJ is "not require[d] . . . to use particular language or adhere to a particular format in conducting [her] analysis"; rather, there must be "a sufficient development of the record and explanation of findings to permit meaningful review." *Jones,* 364 F.3d at 505.

Ms. Popovich argues that the ALJ failed to consider Popovich's obesity in combination with other impairments and generally failed to consider the combined effect of all her impairments. (Pl. Br. 23–24) However, the ALJ explicitly stated that she "fully considered [Popovich's] obesity in the context of the overall record in making this decision." (R. 14) Further, the record contains no evidence that Popovich's obesity, alone or in combination with any other impairment, resulted in severe impairment that is the medical equivalent of a listed impairment, and Popovich does not point to any. Nor does Popovich cite medical evidence to demonstrate that any combination of her impairments is the medical equivalent of a listed impairment.

Thus, assessing the record as a whole, I am satisfied that substantial evidence supports the ALJ's conclusion that Popovich's impairments alone and in combination, including the combination of Popovich's obesity and her other impairments, do not match the severity of a listed impairment.

10

## 2. The ALJ's RFC Evaluation

Residual functional capacity is an assessment of the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545. To determine a claimant's RFC, an ALJ must engage in a two-step process: first, consider all of a claimant's symptoms that can reasonably be accepted as consistent with the objective medical evidence, and second, determine how those symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529. Here, ALJ Shillin determined that Ms. Popovich had the residual functional capacity to "perform light work" with additional limitations. (R. 14) Popovich argues that the ALJ erred by setting her own expertise against that of Popovich's treating physician, a cardiologist. (*See* Pl. Br. 27–30) Alternatively and in addition, Popovich argues that the ALJ improperly rejected the treating cardiologist's opinion in favor of that of Dr. Fechner, the medical expert. Separately, Popovich argues that the ALJ improperly dismissed Popovich's subjective complaints. (Pl. Br. 30–35)

It is true that the ALJ must consider all relevant evidence, including subjective complaints, in determining the RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)). However, the plaintiff retains the burden of supporting her alleged RFC limitations. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287 (1987); *see also* 20 C.F.R. § 404.1545(a) ("In general, you [the plaintiff] are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Therefore, it is Popovich's burden—not the Commissioner's—to support her allegation that she is unable to perform light work. For the following reasons, I find that substantial evidence supports the ALJ's decision to credit Dr. Fechner's opinion and to discount both Dr. Glasofer's opinion and Popovich's subjective complaints.

### a) *The ALJ's Crediting Dr. Fechner's Opinion Over that of Dr. Glasofer*

Ms. Popovich contends that ALJ Shillin, in reaching her RFC determination, erred by "adopt[ing] Dr. Fechner's opinion entirely without any explanation as to why the opinion of a [non-examining, non-treating] doctor . . . is supported by substantial evidence (and what evidence) while the opinion of plaintiff's treating cardiologist [Dr. Glasofer] is nothing b[ut] conclusory." (Pl. Br. 29) I disagree. Popovich's contention—that the ALJ did not provide a reasoned explanation supported by substantial evidence—lacks merit.

In general, the opinion of a medical professional who has treated the claimant is entitled to deference. 20 CFR § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . ."); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." (internal quotation marks omitted)).

However, the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 CFR § 404.1527(c)(2). Further, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011). Rather, "[s]tate agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec*, 667 F.3d 356, 361 (3d Cir. 2011).

If the treating physician's opinion is not to be accorded controlling weight, the ALJ must weigh it, like any other medical opinion, in light of the

factors set forth in 20 CFR § 404.1527. *See* 20 CFR § 404.1527(c)(1-6) (ALJ must consider: (i) the examining relationship between the claimant and the doctor; (ii) the treatment relationship between the claimant and the doctor; (iii) the extent to which the opinion is supported by relevant evidence; (iv) the extent to which the opinion is consistent with the record as a whole; and (v) whether the doctor providing the opinion is a specialist.) Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citation omitted).

"Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429). In particular:

> The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Id.* at 317–18 (internal citations and quotations omitted).

Here, however, the ALJ based her refusal to credit Dr. Glasofer's opinion on objective medical evidence that contradicted Dr. Glasofer's opinion and supported that of Dr. Fechner. The decision rests on substantial evidence, not the ALJ's credibility judgments, speculation, or lay opinion. [5]

---

[5]   ALJ Shillin did find Dr. Fechner's opinion credible, but she based her credibility judgments on his opinion's consistency with the objective medical evidence in the record, rather than on a subjective impression based on Dr. Fechner's demeanor, affect, etc. during his testimony.

In her written discussion of the RFC evaluation, the ALJ first summarized Popovich's testimony and then reviewed her cardiac and pulmonary problems as documented in the record and as evaluated by Drs. Fechner and Glasofer. (R. 15) ALJ Shillin, assessing the record as a whole, found that:

> Treatment records from 2011 indicate that the claimant's medications have helped and that the claimant's atrial fibrillation and heart problems were essentially under control through the present. Diagnostic findings document a low but essentially unremarkable ejection fraction of 43, unremarkable EKG findings, normal pulse and heart rate, and normal oxygenation level findings. In addition, the claimant denied negative side effects with the anticoagulation medicine. As credibly opined by the impartial medical expert at the hearing, the claimant's atrial fibrillation was fairly well-controlled (Exhibits 2F, 5F, 8F).

(R. 16) The ALJ did not ignore evidence of the occasional lower ejection fraction, noting that:

> January 2013 diagnostic findings indicated a moderately dilated left ventricle with some reduction in functioning, and an estimated ejection fraction of 35% (Exhibit 1F). However, the balance of the diagnostic evidence shows a mild reduction in functioning.[6]

---

[6] The ALJ went on to cite treatment notes from February 2013. April 2014, and June 2014, demonstrating that Popovich's conditions resulted in only mild or moderate reduction in functioning:

> February 2013 treatment notes indicate no symptoms of congestive heart failure, and follow-up visits every three weeks or so generally demonstrate no negative changes or problems, with the claimant reporting that she was feeling well. August 2013 treatment notes indicate that the claimant's overall ventricular function was mildly reduced, with an ejection fraction of 43%. Diagnostic findings further indicated mildly dilated diastolic, systolic, and left atrium functioning, moderately dilated right atrium functioning, mild to moderate mitral regurgitation and mild tricuspid regurgitation. An April 2014 EMG was negative for myocardial ischemia. SPECT findings were mildly abnormal indicating myocardial perfusion, however with normal left ventricular functioning. June 2014 ejection fraction findings were 48%, indicating mildly reduced left ventricular functioning (with normal right fit regular functioning as

14

(*Id.*)

Popovich incorrectly states that Dr. Fechner was under the "misapprehension that plaintiff didn't suffer any other heart impairment other than atrial fib." (Pl. Br. 13 – 14, 29) In fact, Dr. Fechner reviewed Popovich's medical records in the record and stated that Popovich "has a few problems," but "her main problem is atrial fibrillation."[7] (R. 28)

Further, the ALJ afforded moderate weight to the opinion of state agency physician, Dr. Przybyla, who concluded that Popovich was able to perform light work (R. 17, 450). *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (establishing that state agency physicians are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation"); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("State agent opinions merit significant consideration"). Dr. Przybyla's opinion was consistent with that of Dr. Fechner.

---

noted), and trace pulmonary regurgitation. The Doppler findings were consistent with normal ventricular functioning (Exhibit 6F).

(R. 16)

In challenging the ALJ's reliance on Dr. Fechner's opinion, Popovich mischaracterizes her ejection fraction over the relevant period by implying that it remained at 35% for much or most of the period. She says: "When asked about the 35% ejection fraction (slightly above listing-level) the doctor replied that it ultimately went up to 43%." (Pl. Br. 29) This is misleading, however, as the great majority of ejection fraction reports reflect fractions of 43% or higher; Popovich's other ejection fractions were 40% (R. 421), 43% (R. 455), 48% (R. 590, 598), 50% (R. 429), and 55% (R. 493).

[7]    Popovich also questions Dr. Fechner's credibility by noting that he was not familiar with the blood thinner "Xarelto." (Pl. Br. 29–30) However, Popovich does not make any argument as to how Popovich's use of Xarelto requires a different RFC finding, and it is her burden to do so. Further, once Popovich's attorney clarified that Xarelto is a blood thinner, Dr. Fechner was able to explain the possible risks of consistent use of blood thinners, and he adjusted the RFC to account for the risk of spontaneous bleeding. (R. 36–37)

15

The ALJ acknowledged Dr. Glasofer's opinion, noting that "the claimant's treating physician, Dr. Glasofer indicated in a conclusory March 2014 opinion (Exhibit 7F) that the claimant would be unable to work an eight hour day because she suffers from fatigue due to atrial fibrillation and cardiomyopathy." (R. 16) However, the ALJ "afforded little weight" to Dr. Glasofer's opinion because "no persuasive supporting medical rationale was proffered," and "there is no indication as to when Dr. Glasofer last saw the claimant and as to the frequency of treatment." (*Id.*) The ALJ's decision to afford Dr. Glasofer's opinion little weight is supported by substantial evidence. Dr. Glasofer offered his opinion on March 26, 2014, and his only explanation for his assessment that Popovich cannot work from that date until "1 y[ea]r from now" is that "fatigue due to AF & cardiomyopathy can limit ability to work." (R. 610) Dr. Glasofer's conclusory opinion provides no detail about the extent of Popovich's atrial fibrillation and cardiomyopathy at the time, nor does it identify the extent of the fatigue or the degree and nature of work-related limitations that "can" result.

ALJ Shillin was entitled to credit the opinion of Dr. Fechner, who explained his opinion in light of the entire medical record, in opposition to Dr. Glasofer's conclusory opinion. Further, as the Commissioner has noted, Dr. Glasofer offered his opinion during a period when Popovich's heart rate was high, even with medication. (Def. Br. 25) (citing R. 583, 610) Dr. Glasofer changed Popovich's medication on that same day, and, in treatment records from office visits in June and December 2014, he reported that Popovich "is doing much better" and that her "rates are better controlled." (R. 592, 611) On both occasions Dr. Glasofer still notes that Popovich "gets fatigued," but he does not describe the degree of fatigue.[8]

---

[8] Included in the administrative record are a cardiac impairment questionnaire completed by Dr. Glasofer (R. 627–29) and treatment records from office visits (R. 615–

16

I find that the ALJ sufficiently analyzed Dr. Glasofer's opinion and explained her reasons for affording it little weight and for rejecting it in favor of medical consultant Dr. Fechner's opinion that Popovich could perform light work with few limitations.

### b) The ALJ's Rejection of Popovich's Subjective Complaints

Ms. Popovich also argues that the ALJ erred in rejecting Popovich's subjective report of her functional limitations as being unsupported by the record. (R. 16) The ALJ found that Popovich's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.'" (R. 17) Popovich objects, asserting that she "can't find any . . . reasons articulated anywhere before or after [the ALJ's] promise" to explain her reasons for finding Popovich's subjective complaints "not entirely credible." (Pl Br. 34–35) Relatedly, according to Popovich, the ALJ did not comply with the "pain protocol" outlined in SSR 96-7p.[9] (Pl. Br. 33–34) I disagree.

SSR 96–7p provides that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." *Id.* The regulation then prescribes a two-step process for evaluating a claimant's statements about her own physical or mental impairments. Such statements, by themselves, are insufficient to establish the existence of an impairment or disability. *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements,* SSR 96–7P

---

23) that occurred after the ALJ issued her decision. Although these documents may indicate a worsening of Popovich's fatigue, Popovich does not mention the documents in her brief and I do not consider them here.

[9]     As of March 28, 2016, SSR 16-3p has superseded SSR 96-7p. However, SSR 96-7p was in effect on January 13, 2015 when the ALJ issued her decision in this case. Popovich does not argue the SSR 16-3p should now apply.

(S.S.A. July 2, 1996). Instead, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s)-i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques-that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

At this second step, if the ALJ finds that the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, she must also consider such factors as:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p (citing 20 CFR §§ 404.1529(c), 416.929(c)).

The ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." SSR 96–7p; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). In this case, ALJ Shillin did what was required of her, articulating specific reasons for her credibility findings that were supported by the evidence in the record.

In conducting the two-step analysis prescribed by SSR 96–7p, ALJ Shillin first summarized Popovich's testimony from the hearing before ALJ Lissek as follows:

> She went to Overlook Hospital because she was light-headed, dizzy and experienced shortness of breath. She states her condition is better but she had a hard time dealing with the medication and its side effects, including dizziness, tingling, and being able to only drive 15 minutes away. She also testified that she only goes out with people and not by herself, that her hands are very achy, and that she does not carry a pocketbook anymore as it is too heavy.
>
> She takes 5 medications a day and her feet swell if she does not take a water pill. Significantly, her medication controls her cardiac issue, but the side effects are what her main problem is.
>
> She stated she needs frequent access to the bathroom due to her medication, which makes her retain water.
>
> She stated that she can lift up to 10 to 15 lbs, that she can walk for only about 1 to 2 blocks at a time before needing to rest, and that she cannot drive far due to lightheadedness (her sister drove her to the hearing).
>
> The claimant was crying at the hearing and stated that she does not have her independence as before and further noted a narrow range of activities of daily living as her mother and sister clean and cook for her, and her bedroom was moved down to the 1st floor (and her mom is on the 3rd floor now).

(R. 15)

Later in the decision, ALJ Shillin articulated findings that conflict with Popovich's subjective complaints. For example, Popovich "state[d] her [cardiac] condition is better but she had a hard time dealing with the medication and its side effects, including dizziness, tingling, and being able to only drive 15 minutes away." (R. 15) However, the ALJ found that Dr. Fechner "credibly opined that none of the claimant's medication would be expected to have side effects and the medication would not be expected to interfere with the residual functional capacity." (R. 16) Further, although Popovich testified that "she

needs frequent access to the bathroom due to her medication, which makes her retain water," ALJ Shillin found that:

> the extreme number of bathroom breaks asserted by claimant's counsel is unsubstantiated by the record. In response to complaints of Cardizem's potential water retentive side effects (that would require the claimant to take more bathroom breaks), the impartial medical expert credibly noted that the claimant could be switched to another medication that would not cause water retention thereby reducing the number of bathroom breaks. Consequently, great weight shall be afforded this opinion indicating that appropriate alternative medication could reduce the number of bathroom breaks.

(R. 17) Additionally, the ALJ noted at step five that "there is no persuasive medical evidence to support the claimant's complaints of numbness and tingling in the hands."[10] (R. 18) Popovich does not point to any. It is possible to weigh the evidence differently, but the ALJ discharged her duty here, and her determinations are supported by substantial evidence.

Finally, Popovich objects to the ALJ's omission of Popovich's work history as a factor in evaluating her credibility, citing an work history of 25 straight years of earning "all 100 possible quarters of coverage," ending with the onset of her cardiovascular impairments (Pl. Br. 34) However, "[t]he fact alone that a claimant has a long work history does not require a remand, particularly when medical evidence does not support a claimant's testimony of the extent of her limitations." *Salazar v. Colvin*, No. CIV.A. 12-6170, 2014 WL 6633217, at *7 (E.D. Pa. Nov. 24, 2014) (citing *Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004) (concluding that the ALJ did not err in not affording plaintiff heightened credibility based solely on plaintiff's work history)). Here, no

---

[10]    At the first hearing, after Popovich described her hand pain, ALJ Lissek asked whether there were any EMG tests that had ever been conducted to test her hand symptoms: none had been conducted. (R. 72–73)

remand is required, because ALJ Shillin found that the medical evidence did not support Popovich's testimony of the extent of her limitations.

As a result, I find that the ALJ's credibility determination is supported by substantial evidence. Popovich's objections to the assessment of her credibility are unavailing.

### c) *Allegations of Procedural Irregularities*

Popovich also argues that the administrative hearings and decision in her case did not conform to the procedural guidance set forth in the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"). First, Popovich argues that the substitution of ALJ Shillin for ALJ Lissek did not conform to the guidelines in HALLEX I-2-840, because ALJ Shillin issued the decision but did not directly observe Popovich's testimony of her subjective complaints. Similarly, the medical expert never heard Popovich testify, and "was not given any synopsis or particulars of that testimony. This was in contradiction to HALLEX I-2-539, which instructs the ALJ to summarize the opening statement or relevant testimony on the record for the medical expert not present during the opening statement or relevant testimony." (Pl. Br. 10–11) In short, Popovich alleges that "ALJ Shillin improperly opted to take the experts' testimony without having plaintiff begin the hearing anew, testify, allow the expert to hear her testimony, allow herself to hear that testimony, or allow her attorney an opening statement." (Pl. Br. 12)

However, Popovich's objections are unavailing. Without more, nonconformity to HALLEX provisions is not a basis for remand. *See Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) ("HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights.") (quoting *Bordes v. Comm'r of Soc. Sec.*, 235 Fed. Appx. 853, 859 (3d Cir. 2007)); *see also Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S. Ct. 1468) ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind

the SSA. Rather, it is a 13–volume handbook for internal use by thousands of SSA employees."); *Moore v. Apfel,* 216 F.3d 864, 868 (9th Cir. 2000) ("HALLEX is strictly an internal guidance tool, providing policy and other procedural guidelines to ALJs and other staff members. As such, it does not . . . carry the force and effect of law."). "Since the manual is not binding, allegations of noncompliance should not be reviewed." *Cartagena v. Comm'r of Soc. Sec.,* No. 2:10-CV-05712-WJM, 2012 WL 1161554, at *5 (D.N.J. Apr. 9, 2012) (citing *Moore v. Apfel,* 216 F.3d at 869).

HALLEX provisions aside, Popovich has not demonstrated that she suffered any prejudice resulting from ALJ Shillin conducting the supplementary hearing in ALJ Lissek's place or from Popovich not testifying at the supplementary hearing. In fact, Popovich was represented at that hearing by her attorney, Walter Curtis. Mr. Curtis raised no objection to ALJ Shillin presiding, nor did he request that he be allowed an opening statement or that Popovich be allowed to testify again prior to the medical expert's testimony. (*See* R. 26–53) Because Popovich has not demonstrated any prejudice resulting from the procedures employed, no remand is necessary.

In sum, then, ALJ Shillin's decision adequately indicates the basis for her determination, and the record as a whole supports her conclusion as to Popovich's RFC through January 13, 2015. The RFC is thus supported by substantial evidence. When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones,* 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak,* 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder."). I therefore affirm the ALJ's RFC determination.

### III.    CONCLUSION

For the reasons expressed above, Ms. Popovich's claims of error fail to show that the ALJ's decision was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Popovich's claims for DIB and SSI, which is therefore AFFIRMED. An appropriate order accompanies this Opinion.

Dated: June 27, 2017

**KEVIN MCNULTY**
**United States District Judge**